1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7  JUANARD D. ROBINSON,                    )    1:03-cv-05684-TAG HC
                                           )
8              Petitioner,                 )    ORDER DENYING PETITION FOR WRIT
                                           )    OF HABEAS CORPUS (Doc. 1)
9          vs.                             )
                                           )    ORDER DIRECTING CLERK OF COURT
10  A.W. CRAWFORD,                         )    TO ENTER JUDGMENT IN FAVOR OF
                                           )    RESPONDENT
11             Respondent.                 )
                                           )
12  _____       )

13
14      Petitioner is a state prisoner proceeding pro se and in forma pauperis with a Petition for

15  Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

16                          **PROCEDURAL HISTORY**

17      Petitioner is in custody of the California Department of Corrections and Rehabilitation as

18  a result of convictions in the Superior Court of California, County of Kern (the "Superior Court")

19  of failing to register as a sex offender (Cal. Pen. Code § 290(g)(2)), and obstructing/resisting a

20  peace officer in the performance of his duties. (Cal. Pen. Code § 69).   (Clerk's Transcript on

21  Appeal ("CT") 231).    Petitioner was sentenced to two concurrent prison terms of four years on

22  the substantive counts and two additional one-year enhancements pursuant to California Penal

23  Code §667.5(b), for a total sentence of six years.   (Id.). [1]

24      Petitioner filed a direct appeal in the California Court of Appeals, Fifth Appellate District

25  (the "5th DCA"). (Lodged Document ("LD") , Exh. A).   On February 13, 2003, the 5th DCA

26  affirmed Petitioner's conviction in an unpublished opinion.  (LD, Exh. D).   Petitioner timely

27
28      [1]Petitioner was also convicted of misdemeanor battery on a police officer (Cal. Pen. Code § 243(b)), and
was sentenced to a concurrent term of one year in the county jail.  (CT 228).

1  filed a petition for review in the California Supreme Court.  (LD, Exh. E), which was denied on

2  April 23, 2003.  (LD, Exh. F).  On May 27, 2003, Petitioner filed the instant petition.  (Doc. 1).

3  On October 14, 2003,  Respondent filed a response to the petition.  (Doc. 18).  On October 23,

4  2003, Petitioner filed his Traverse.  (Doc. 19).  Respondent concedes that Petitioner's four

5  grounds for relief have been fully exhausted.  (Doc. 18, p. 2).

## FACTUAL BACKGROUND

The Court adopts the Statement of Facts contained in the 5th DCA's unpublished opinion

in Petitioner's direct state appeal:

> In January 2001, Ridgecrest police arrested [Petitioner] for failing to register as a sex
> offender.  When the detective attempted to handcuff him, [Petitioner] pulled away
> but finally cooperated.  The detective then began to walk [Petitioner] to the patrol
> car, accompanied by two officers. [Petitioner] fell to his knees and began yelling.
> After getting up, [Petitioner] again fell to the ground, yelling and repeatedly kicking
> one of the officers in the leg.

(LD, Exh. D, p. 2).

## DISCUSSION

### I.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody

pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or

treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor,

529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as

guaranteed by the United States Constitution.  The challenged conviction arises out of the Kern

County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C.

§ 2254(a); 28 U.S.C.§ 2241(d).  Accordingly, the Court has jurisdiction over this action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

of 1996 (the "AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

enactment.  Lindh v. Murphy, 521 U.S. 320 (1997);  Jeffries v. Wood, 114 F.3d 1484, 1500 (9th

Cir. 1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA

only applicable to cases filed after statute's enactment).  The original petition was filed on May

27, 2003, after the enactment of the AEDPA, and thus it is governed by the AEDPA.

1      **II.  Legal Standard of Review**

2           A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless

3      the adjudication of a prisoner's claim (1) "resulted in a decision that was contrary to, or involved

4      an unreasonable application of, clearly established Federal law, as determined by the Supreme

5      Court of the United States" or (2) resulted in a decision that "was based on an unreasonable

6      determination of the facts in light of the evidence presented in the State court proceeding."

7      28 U.S.C. § 2254(d);  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70-71 (2003);  <u>Williams v. Taylor</u>, 529

8      U.S. at 412-413.

9           The first prong of federal habeas review involves the "contrary to" and "unreasonable

10     application" clauses of 28 U.S.C. § 2254(d)(1).  This prong pertains to questions of law and

11     mixed questions of law and fact.  <u>Williams v. Taylor</u>, 529 U.S. at 407-410;  <u>Davis v. Woodford</u>,

12     384 F.3d 628, 637 (9th Cir. 2004).  A state court decision is "contrary to" clearly established

13     federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme

14     Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a

15     [Supreme Court] decision but reaches a different result."  <u>Brown v. Payton</u>, 544 U.S 133, 141

16     (2005)(citing <u>Williams v. Taylor</u>, 529 U.S. at 405).  A state court decision involves an

17     "unreasonable application" of clearly established federal law "if the state court applies [the

18     Supreme Court's precedents] to the facts in an objectively unreasonable manner."  <u>Brown v.</u>

19     <u>Payton</u>, 544 U.S. at 141.  Consequently, a federal court may not grant habeas relief simply

20     because the state court's decision is incorrect or erroneous; the state court's decision must also be

21     objectively unreasonable.  <u>Wiggins v. Smith</u>, 539 U.S. 510, 511 (2003)(citing <u>Williams v.</u>

22     <u>Taylor</u>, 529 U.S. at 409).  Section 2254(d)(1)'s reference to "clearly established Federal law"

23     refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time

24     of the relevant state-court decision."  <u>Williams v. Taylor</u>, 529 U.S. at 412; <u>Lockyer v. Andrade</u>,

25     538 U.S. at 412; <u>Barker v. Fleming</u>, 423 F. 3d 1085, 1093 (9th Cir. 2005).

26          The second prong of federal habeas review involves the "unreasonable determination"

27     clause of 28 U.S.C. § 2254(d)(2).  This prong pertains to state court decisions based on factual

28     findings.  <u>Davis v. Woodford</u>, 384 F.3d at 637 (citing <u>Miller-El v. Cockrell</u>, 537 U.S. 322

3

1   (2003)).  Under § 2254(d)(2), a federal court may grant habeas relief if a state court's

2   adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable

3   determination of the facts in light of the evidence presented in the State court proceeding."

4   Wiggins v. Smith, 539 U.S. at 520;  Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state

5   court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity

6   to litigate is adequate to support the judgment").  A state court's factual finding is unreasonable

7   when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id. ; see

8   Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543

9   U.S. 1038 (2004).  The AEDPA also requires that considerable deference be given to a state

10  court's factual findings. A state court's factual findings are  presumed to be correct, and the

11  presumption may be rebutted only by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

12          To determine whether habeas relief is available under § 2254(d),  the federal court looks

13  to the last reasoned state court decision as the basis of the state court's decision.  Robinson v.

14  Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court decided the petitioner's

15  claims on the merits but provided no reasoning for its decision, the federal habeas court must

16  independently review the record to determine whether habeas corpus relief is available under

17  § 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d

18  976, 981-982 (9th Cir. 2000).  Where the state court denied the petitioner's claims on procedural

19  grounds or did not decide the claims on the merits, the deferential standard of the AEDPA does

20  not apply and the federal court must review the petitioner's 's claims de novo.  Pirtle v. Morgan,

21  313 F.3d 1160, 1167 (9th Cir. 2002).

22          **III.  Review of Petitioner's Claims**

23          The petition alleges the following grounds for relief:

24      **Ground One**          **Whether Petitioner's Sixth and Fourteenth Amendment rights
25                               were violated by the trial court's removal of Petitioner from
                                 the courtroom for disruptive behavior.**

26      **Ground Two**          **Whether Petitioner's Constitutional rights were violated by the
27                               State Court's exclusion of Petitioner's testimony about his 1986
                                 plea agreement**

28      **Ground Three**        **Whether the State Court violated Petitioner's Constitutional
                                 rights by instructing the jury with CALJIC No. 17.41.1.**

4

**Ground Four**        **Whether the State Court's rejection of Petitioner's cumulative error claim violated Petitioner's Constitutional rights**

**Ground One**        **Whether Petitioner's Sixth and Fourteenth Amendment rights were violated by the trial court's removal of Petitioner from the courtroom for disruptive behavior.**

Petitioner first alleges that the trial court's decision to remove Petitioner from the courtroom during trial, without prior warning to Petitioner, deprived him of his constitutional right to due process and to confront witnesses. (Doc. 1, p. 5). This contention is without merit.

The 5th DCA summarized the operative facts relating to this claim as follows:

When appellant's case was called for trial, with appellant representing himself, the court asked the bailiff to bring in the jury panel. After jury selection, but out of the presence of the jury, appellant began to act out. After having appellant removed, the court characterized the disruption as follows:

"The record will reflect that [appellant] has been removed from the courtroom. The Court was unable to make a complete record in his presence because of his obstreperous conduct. He was shouting at the top of his lungs. Whenever the Court tried to speak, he would yell so loud that the court reporter was obstructed from hearing what was going on.

"The record should reflect that from the Court's first arrival in the courtroom, [appellant] was shouting and acting crazy, although the Court does not believe that he is crazy. The Court believes he's crazy like a fox.

"But it is clear that his conduct is obstreperous, and it would not be suitable and appropriate for him to conduct his own defense, nor would he be willing to do so. [¶] All evidence that the Court has indicates that his mind is clear, but he is intent on being so disruptive that no possible trial could go forward."

The court then called in the jury and admonished them to disregard any commotion they might have heard. After dismissing the jury for the day and attempting to contact appointed defense counsel, the court adjourned.

The next day, while represented by appointed counsel, appellant again acted out. The court again characterized the incident:

"The record will reflect that [appellant], immediately upon taking his seat and being addressed by the Court, started shouting in a loud voice, trying to disrupt the proceedings. The Court tried to explain to him that he had an obligation to obey and to behave himself, and it was clear to the Court immediately that he was returning to exactly the same process that he had done yesterday afternoon. He knew exactly what he was doing in trying to disrupt the proceedings.

5

> "The Court instructed the bailiffs to remove him from the courtroom. They immediately did so.  As he approached the side door, he threw himself on the floor, attempting to prevent that from occurring, and continued yelling and resisting.  The deputies removed him from the courtroom.

> "The record should reflect that the kind of yelling was obstructionist and appeared to the Court to be knowing. So the Court will order that he has forfeited his right to be present in the trial because of his obvious attempts to disrupt the proceedings and prevent it from going forward.

> "If at any time he, through his attorney, indicates his willingness to obey, we'll give it another try."

(LD, Exh. D, pp. 2-3).

After Petitioner's removal for the second time, the trial proceeded in Petitioner's absence until later that afternoon, at which time defense counsel indicated that Petitioner wished to testify in his own behalf.  (RT 103).  Counsel indicated that Petitioner was not going to be disruptive. (RT 105).  Petitioner was then brought back into the courtroom where the judge explained that he would be allowed to testify only so long as he remained non-disruptive.  (RT 112).  If he became disruptive, the judge indicated that Petitioner would be removed once again from the courtroom. (Id.).  Petitioner indicated that he understood.  (Id.).  The court then told Petitioner that if he behaved himself during his own testimony, then the Court would allow him to remain in the courtroom for the rest of the trial.  (Id.).  Petitioner agreed to cooperate.  (Id.).  There were no further outbreaks of disruptive behavior.

Under clearly established United States Supreme Court precedent, "[A] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure."  Kentucky v. Stincer, 482 U.S. 730, 745 (1987); Campbell v. Rice, 302 F.3d 892, 898 (9th Cir. 2002).  "The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, but we have recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him."  United States v. Gagnon, 470 U.S. 522, 526 (1985); Campbell v. Wood, 18 F.3d 662, 671 (9th Cir. 1994).  The due process clause guarantees the defendant the right "to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his

6

1   opportunity to defend against the charge." <u>Stincer</u>, 482 U.S. at 745 (quoting <u>Snyder v.</u>

2   <u>Massachusetts</u>, 291 U.S. 97, 105-106 (1934), <u>overruled on other grounds</u>, <u>Malloy v. Hogan</u>.

3   378 U.S.1 (1964)).  Thus, "an accused has a right to be present at all stages of the trial where his

4   absence might frustrate the fairness of the proceedings." <u>Faretta v. California</u>, 422 U.S. 806,

5   819-820 & n. 15 (1975); <u>Rushen v. Spain</u>, 464 U.S. 114, 117 (1983)(right to be present attaches

6   "at all critical stages of the trial.").

7           However, the right does not attach "'when [his] presence would be useless, or the benefit

8   but a shadow.'" <u>Stincer</u>, 482 U.S. at 745 (quoting <u>Snyder</u>, 291 U.S. at 106-107); <u>see also</u>

9   <u>Gagnon</u>, 470 U.S. at 527(constitutional right of presence not implicated if defendant cannot do or

10  gain anything by being present).  A defendant's right to be personally present during a trial may

11  also be forfeited or waived by his disruptive behavior. <u>Illinois v. Allen</u>, 397 U.S. 337, 342-343

12  (1970).  "It is essential to the proper administration of criminal justice that dignity, order, and

13  decorum be the hallmarks of all court proceedings in our country.  The flagrant disregard in the

14  courtroom of elementary standards of proper conduct should not and cannot be tolerated." <u>Id.</u> at

15  343.  "[A] defendant can lose his right to be present at trial if, after he has been warned by the

16  judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on

17  conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his

18  trial cannot be carried on with him in the courtroom." <u>Id.</u> at 343.  "Once lost, the right to be

19  present can...be reclaimed as soon as the defendant is willing to conduct himself consistently

20  with the decorum and respect inherent in the concept of courts and judicial proceedings." <u>Id.</u>

21          Here, the 5th DCA found neither a violation of state nor federal law:

22          California provides for removal of a defendant from the courtroom in "[a]ny case in
            which the defendant, after he has been warned by the judge that he will be removed
23          if he continues his disruptive behavior, nevertheless insists on conducting himself in
            a manner so disorderly, disruptive, and disrespectful of the court that the trial cannot
24          be carried on with him in the courtroom."  (§ 1043, subd. (B)(1).)  Federal circuit
            courts have similarly required prior warning before actually removing a disruptive
25          defendant.  (<u>Badger v. Cardwell</u> (9th Cir. 1978) 587 F.2d 968, 970-971.)  Even so,
            this right can be waived by an appellant's actions under the circumstances: "If this
26          were not the rule, many persons, by their own acts, could effectively prevent
            themselves from ever being tried....Surely, the Legislature in adopting section 1043
27          did not intent such an absurd result." (<u>People v. Rogers</u> (1957) 150 Cal. App.2d 403,
            415.)  "'The trial court's ability to remove a disruptive or potentially disruptive
28          defendant follows not only from section 1043, subdivision (b)(1), but also from the
            trial court's inherent power to establish order in its courtroom. [Citation.]'

                                                    7

1    [Citation.]" (People v. Majors (1998) 18 Cal.4th 385, 415).

2        The record here reflects that, prior to bringing in the jury, the trial court attempted
      to warn appellant of the repercussions of his disruptive behavior, only to be frustrated
3    by more disruptive behavior...Under the circumstances, the court's initial removal of
      appellant for misbehavior effectively put him on notice that continued similar
4    conduct would result in his removal. This initial removal of appellant, even without
      warning, was not prejudicial to appellant, since no substantive proceedings ensued
5    in his absence. Rather, such removal informed appellant that when confronted with
      unacceptable conduct, the court could–and would–remove him from the proceedings.
6    To conclude otherwise would be to allow appellant to benefit, impermissibly, from
      his own belligerence and bellicosity. (U.S. v. McCormac (2002) 309 F.3d 623,
7    626.)"

8    (LD, Exh. D, pp. 4-5).

9        The Court can add little to the 5th DCA's analysis. Though the initial removal was,

10   technically, without warning, the trial court had attempted to warn Petitioner, but was prevented

11   from doing so by Petitioner's own disruptive behavior. As the 5th DCA observed, following the

12   first removal of Petitioner, no substantive proceedings occurred during Petitioner's absence.

13   Because the proceedings following this initial removal did not involve witnesses or evidence

14   against Petitioner, no Confrontation Clause-based "presence" right was implicated. United

15   States v. McCoy, 8 F.3d 495, 496 (7th Cir. 1993)(trial court did not violate defendant's

16   "presence" right by not including him in sidebar and in camera conferences).

17       Nor can the Court discern a due process violation regarding this initial removal. The

18   governing test for a due process violation related to a "presence" right is as follows: "[T]he

19   presence of a defendant is a condition of due process to the extent that a fair and just hearing

20   would be thwarted by his absence, and to that extent only." Gagnon, 470 U.S. at 1526. Since

21   nothing of any legal significance occurred in the proceedings following the first removal,

22   Petitioner cannot meet that standard. His absence did not thwart the conduct of a fair and just

23   hearing. Accordingly, no due process violation occurred.

24       Regarding the second removal, the 5th DCA correctly characterized Petitioner's initial

25   removal as an effective warning that the trial court not only could, but *would* remove him if his

26   disruptive behavior continued. Therefore, Petitioner was on notice when he again acted out and

27   was removed. The trial court described Petitioner's conduct during this second episode as

28   "shouting in a loud voice, trying to disrupt the proceedings." The trial court noted that Petitioner

8

1    appeared to know "exactly what he was doing," that it deemed Petitioner to have forfeited his

2    right to be present, but that, if he indicated his willingness to conduct himself appropriately,

3    "we'll give it another try."

4         The trial court's actions comport squarely with clearly established federal law, as

5    described above.  Petitioner, for his part, clearly conducted "himself in a manner so disorderly,

6    disruptive, and disrespectful of the court that his trial cannot be carried on with him in the

7    courtroom."  Allen,  397 U.S. at 343.  Thus, the trial court's actions were entirely consistent with

8    clearly established federal law as determined by the United States Supreme Court.  The 5th DCA

9    correctly reached this same conclusion as well.  Thus, the state court adjudication was not

10   contrary to or an unreasonable application of clearly established federal law.

11        Moreover, even if the foregoing were not the case, any error would be harmless under

12   Brecht v. Abrahamson, 507 U.S. 619, 623 (1993).  On collateral review, "[a] federal court may

13   grant habeas relief based on trial error only when that error had substantial and injurious effect or

14   influence in determining the jury's verdict."  Id.  Thus, the question is whether the error resulted

15   in "actual prejudice."  Id. at 622- 623, 638.  Here, Petitioner has not directed the Court to any

16   "actual prejudice" resulting from either his first or second absence from the courtroom.

17   Accordingly, Ground One must be denied.

18          **Ground Two**              **Whether Petitioner's Constitutional rights were violated by the**
                                        **State Court's exclusion of Petitioner's testimony about his 1986**
19                                       **plea agreement.**

20

21        Petitioner next argues that the trial court erred in excluding Petitioner's testimony

22   regarding the terms of his 1986 plea agreement, in which Petitioner contends he was told he was

23   not subject to the registration requirement for sex offenders.  (Doc. 1, p. 5).  Petitioner also raises

24   an estoppel argument, contending that, during his 1986 plea negotiations,  he was affirmatively

25   told that he did not need to register as a sex offender.  (Doc. 1, p. 5-B).  Petitioner contends that

26   the trial court's exclusion of his testimony deprived him of due process and his constitutional

27   right to present a defense.  (Id. at p. 5).  This contention is also without merit.

28   ///

1    Initially, the Court notes that Petitioner does not present a cognizable federal claim.

2    Tinsley v. Borg, 895 F.2d 520, 530 (9th Cir.1990)("incorrect" evidentiary rulings are not the

3    basis for federal habeas relief). The alleged error is strictly a state law issue, and generally, issues

4    of state law are not cognizable on federal habeas. Estelle v. McGuire, 502 U.S. 62, 67 (1991)

5    ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state

6    law.'")(quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)); Gilmore v. Taylor, 508 U.S. 333,

7    348-349 (1993).  Moreover, federal courts are bound by state court rulings on questions of state

8    law.  Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989).

9    Although Petitioner alleges that the exclusion of his testimony constituted a violation of

10   the Constitution, his broad assertion does not transform this claim into a federal one.  Broad,

11   conclusory allegations of unconstitutionality are insufficient to state a cognizable claim.  Jones v.

12   Gomez, 66 F.3d 199, 205 (9th Cir.1995); Greyson v. Kellam, 937 F.2d 1409, 1412 (9th Cir.1991)

13   (bald assertions of ineffective assistance of counsel did not entitle the petitioner to an evidentiary

14   hearing); see also Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir.1999)(citing Gray v.

15   Netherland, 518 U.S. 152, 162-163 (1996) ("general appeals to broad constitutional principles,

16   such as due process, equal protection, and the right to a fair trial, are insufficient to establish

17   exhaustion)).  It appears to the Court that this issue turned exclusively on an issue of state law

18   regarding the admission of hearsay evidence.  Accordingly, Petitioner's blanket assertion of a

19   constitutional violation will not, without more, elevate the claim to one that merits habeas relief.

20   _____Nevertheless, assuming, arguendo, that Ground Two states a cognizable federal claim, it

21   must be rejected on its merits. The gravamen of Petitioner's claim is threefold: (1) that he his

22   1986 plea agreement expressly excluded him from the registration requirement; (2) that he was

23   affirmatively told at the 1986 plea agreement that he did not have to comply with the registration

24   requirement; and (3) that the trial court's exclusion of his testimony regarding the 1986 plea

25   agreement deprived him of a defense at trial.  None of the contentions have merit.

26   In rejecting Petitioner's contention, the 5th DCA rules as follows:

27   The trial court excluded as hearsay appellant's attempts to testify that (1)
     his 1986 plea agreement for commission of a lewd and lascivious act (§ 288, subd.
28   (a)) contained a stipulation that he was not required to register as a sex offender, and
     (2) he was affirmatively told by the court or prosecutor in 1986 that he would not

10

have to register. Appellant contends the court erred in excluding this testimony, which he argues was not offered for the truth of the matter, but rather to show his state of mind. While appellant acknowledges that registration is mandatory and not subject to negotiation, he argues that his testimony was relevant to his actual knowledge of the requirement. [Citation.] In addition, it pertains to his theory, raised here for the first time, of equitable estoppel. Exclusion of the testimony, appellant argues, deprived him of due process, a fair trial, and the right to present a defense. We conclude the argument lacks merit.

On appeal, an appellate court applies the abuse of discretion standard to any ruling on the admissibility of evidence. [Citation.] The trial court has broad discretion to admit or exclude evidence, particularly involving determinations of relevancy, the state-of-mind exception to the hearsay rule, and undue prejudice. [Citation.]

We note first that appellant never raised an equitable estoppel theory of admissibility/relevance at trial. Accordingly, he cannot raise it now on appeal. [Citation.] Appellant contends an offer of proof was not necessary where, as here, the supposed "patent relevance" of the testimony was apparent. We simply do not agree that any such theory was apparent.

The essence of appellant's remaining argument is that the court's ruling deprived him of a defense, i.e., lack of knowledge of any registration requirement. Again, we do not agree. Appellant was allowed to testify that he was present in the courtroom when he entered a plea and when he was sentenced in the 1986 case and that on neither occasion was he made aware of a registration requirement. Appellant also testified that no one from the probation department told him he had to register. Further, he indicated that on his release from the county jail, he was not told that he had to register as a sex offender. In summary, appellant was allowed to testify regarding his lack of actual knowledge of the registration requirement. Further, even if the trial court should have admitted the testimony in question, we can see no way in which appellant was deprived of a defense or prejudiced in this matter.

(LD, Exh. D, pp. 5-6).

A defendant's right to present evidence is not absolute; rather, he must comply with applicable rules of evidence and procedure. Taylor v. Illinois, 484 U.S. 400, 410-411 (1988); Tinsley, 895 F.2d at 530. The defendant does not have "an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." Montana v. Egelhoff, 518 U.S. 37, 42 (1996)(quoting Taylor, 484 U.S. at 410). The State's interest in the orderly conduct of a criminal trial is sufficient to justify the imposition and enforcement of firm, though not always inflexible, rules relating to the identification and presentation of evidence. Taylor, 484 U.S. at 411.

"Hearsay rules...prohibit the introduction of testimony which, though unquestionably relevant, is deemed insufficiently reliable." Egelhoff, 518 U.S. at 42. Although saying that the right to introduce relevant evidence is not absolute is not to say that the Due Process Clause

11

places no limits upon restriction of that right, rather, it is to say that the defendant asserting such a limit must sustain the usual heavy burden that a due process claim entails:

> "[P]reventing and dealing with crime is much more the business of the States than it is of the Federal Government, and...we should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States.  Among other things, it is normally 'within the power of the State to regulate procedures under which its laws are carried out,'...and its decision in this regard is not subject to proscription under the Due Process Clause unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"

Id. at 43 (quoting Patterson v. New York, 432 U.S. 197, 201-202 (1977)).

The determination of whether the exclusion of evidence violates a fundamental principle of justice entails a balancing of five factors: the probative value of the evidence on the central issue; the evidence's reliability; the extent to which the evidence is subject to evaluation by the trier of fact; whether the evidence is the only evidence as to the issue or whether it is cumulative; and whether the evidence amounts to a major part of the defense.  Miller v. Stagner, 757 F.2d 988, 994 (9th Cir. 1985).  In addition to establishing that the exclusion of his testimony denied him the constitutional right to present a defense, Petitioner must also show that this error was not harmless under Brecht.

Applying Stagner's five-part test to the excluded evidence shows that Petitioner's constitutional rights were not violated.   The probative value of the testimony was minimal because, as hearsay, it would have been admitted not for the truth of the matter asserted, but only to show Petitioner's state of mind at the time of the 1986 plea agreement.  However, the issue in this trial was not Petitioner's state of mind upon entering into the plea agreement in 1986, but rather whether he possessed the requisite intent to establish the crime of failure to register under California Penal Code § 290.  The excluded evidence could not have been allowed to prove any post-1986 state of mind regarding Petitioner's failure to register, which was the charge in this case.   Next, the reliability of the testimony is suspect because it is hearsay, because it is uncorroborated by any other evidence, and because Petitioner, without any witnesses or transcripts to contradict him, had a strong motivation to "recall" conversations surrounding the 1986 plea agreement in a light most favorable to his defense.

1   The Court cannot say with any certainty that the jury would or would not have had

2   difficulty evaluating the evidence.  Thus, the prong of the Stagner test is neutral.  As mentioned,

3   since Petitioner was subsequently permitted to testify about his lack of knowledge of the

4   registration requirement, the testimony would have been cumulative.

5   Finally, because Petitioner's testimony would not have been admitted for the truth of the

6   matter asserted–i.e., what he was or was not told vis-a-vis registration at the time of the 1986

7   plea agreement–the excluded evidence did not go *directly* to whether he committed the charged

8   offense of failure to register.  Thus, under Stagner, Petitioner has failed to establish a due process

9   violation.

10   Moreover, the Court need not even reach the question of whether the exclusion of

11   Petitioner's testimony regarding his 1986 plea agreement rises to the level of constitutional error

12   under Stagner, nor does the Court need to conduct the five-part balancing test in that case,

13   because the Court concludes that it is highly unlikely that excluding this evidence had a sufficient

14   impact on the jury's verdict under Brecht.

15   As the 5th DCA observed, Petitioner was allowed to testify that he was not told, and was

16   therefore unaware, of the registration requirement.  Although a technical difference can be drawn

17   between testimony that one was perhaps negligently not informed of the registration requirement

18   and testimony that one was affirmatively told one need not register, ultimately the question for

19   the jury was the same: whether to believe Petitioner's testimony that he was unaware of the

20   registration requirement at the time he committed the charged offense.  The specific reason for

21   his lack of knowledge was, in this context and in the Court's view, irrelevant.  It is no more

22   unreasonable or unlikely that Petitioner was not told at all of the requirement than that his plea

23   agreement expressly excluded such a requirement.  Petitioner has not established that being

24   deprived of the opportunity to explain to the jury this alternative factual scenario that resulted in

25   his lack of knowledge affected in any way the jury's ultimate finding of guilt. Clearly, the jury

26   did not believe Petitioner's version of events.  Nothing in this record suggests that, had Petitioner

27   also been permitted to testify that the plea agreement expressly excluded registration, the jury

28   somehow would have believed him and reached a different verdict.   Accordingly, Petitioner

13

cannot establish that the error, if any, had a substantial and injurious effect or influence in

determining the jury's verdict.  Brecht, 507 U.S. at 637.

For the foregoing reasons, the adjudication by the state court was not contrary to nor an

unreasonable application of clearly established federal law.  Accordingly, Ground Two is denied.

**Ground Three**          **Whether the State Court violated Petitioner's Constitutional rights by instructing the jury with CALJIC No. 17.41.1.**

Petitioner next argues that his Fifth, Sixth and Fourteenth Amendment rights were

violated when the trial court instructed the jury pursuant to CALJIC No. 17.41.1, which

Petitioner alleges improperly intruded into and interfered with the jury's deliberative process.

(Doc. 1, p. 6.)  The Court does not agree.

The record does not contain a colloquy between the court and counsel regarding specific

jury instructions.  Rather, defense counsel simply indicated to the court that he had "gone over"

the instructions.  (RT 107).  He did not indicate any objections to the instructions as proffered.

(Id.).  The jury was later instructed with CALJIC No. 17.41.1 as follows:

> The integrity of a trial requires that jurors, at all times during their
> deliberations, conduct themselves as required by these instructions.  Accordingly,
> should it occur that any juror refuses to deliberate or expresses an intention to
> disregard the law or to decide the case based on penalty or punishment, or any other
> improper basis, it is the obligation of the other jurors to immediately advise the Court
> of the situation.

(CT 199; RT 199).

Generally, the issue of whether a jury instruction is a violation of state law is neither a

federal question nor a proper subject for habeas corpus relief. Estelle v. McGuire, 502 U.S. at 68.

Thus, normally, a claim that challenges the propriety of a jury instruction under state law cannot

reasonably be construed to allege a deprivation of federal rights.  Van Pilon v. Reed, 799 F.2d

1332, 1342 (9th Cir. 1986).  As mentioned, federal courts are bound by state court rulings on

questions of state law. Oxborrow, 877 F.2d at 1399.

A challenge to a jury instruction solely as an error under state law does not normally state

a claim cognizable in a federal habeas corpus action.  See Estelle, 502 U.S. at 71-72. To obtain

federal collateral relief for errors in the jury charge, the petitioner must show that the ailing

1    instruction by itself so infected the entire trial that the resulting conviction violates due process.

2    See id. at 72.   The constitutional significance of the omission of an instruction will depend upon

3    the evidence in the case and the overall instructions given to the jury.  See Duckett v. Godinez,

4    67 F.3d 734, 745 (9th Cir. 1995); see also Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

5         Additionally, the instruction may not be judged in artificial isolation, but must be

6    considered in the context of the instructions as a whole and the trial record. Id. The court must

7    evaluate jury instructions in the context of the overall charge to the jury as a component of the

8    entire trial process. See United States v. Frady, 456 U.S. 152, 169 (1982)(citing Henderson v.

9    Kibbe, 431 U.S. at 154).  Furthermore, even if it is determined that the instruction violated the

10   petitioner's right to due process, the petitioner can only obtain relief if the unconstitutional

11   instruction had a substantial influence on the conviction and thereby resulted in actual prejudice

12   under Brecht, 507 U.S. at 637 (whether the error had a substantial and injurious effect or

13   influence in determining the jury's verdict.). See Hanna v. Riveland, 87 F.3d 1034, 1039 (9th

14   Cir. 1996).

15        The burden of demonstrating that an erroneous instruction was so prejudicial that it will

16   support a collateral attack on the constitutional validity of a state court's judgment is even greater

17   than the showing required to establish plain error on direct appeal. Henderson v. Kibbe, 431 U.S.

18   at 154.  Moreover, an individual such as Petitioner in this case whose claim involves the

19   omission of an instruction "bears an especially heavy burden," because an omission is less likely

20   to be prejudicial than a purported misstatement of the law.  Id. at 155.

21        Under the foregoing authority, the Court must determine whether the challenged

22   instruction was so egregious that the resulting conviction violates due process.  Henderson v.

23   Kibbe, 431 U.S. at 154.   Regarding the trial court's instruction on CALJIC 17.41.1., in

24   Petitioner's direct appeal, the 5th  DCA noted that in People v. Engelman, 28 Cal.4th 436, 439-

25   440 (2002), the California Supreme Court rejected an identical argument to Petitioner's and held

26   that CALJIC No. 17.41.1, "does not infringe upon defendant's federal or state constitutional right

27   to trial by jury or his state constitutional right to a unanimous verdict...."  (LD, Exh. D, pp. 6-7).

28   ///

1    In Engelman, decided after Petitioner's trial, the California Supreme Court directed state

2  trial courts not to give CALJIC No. 17.41.1 in the future based on the State Supreme Court's

3  concern that the instruction "has the potential to intrude unnecessarily on the deliberative process

4  and affect it adversely–both with respect to the freedom of jurors to express their differing views

5  during deliberations, and the proper receptivity they should accord the views of their fellow

6  jurors."  Engelman, 28 Cal.4th at 440-441, 449.  Nevertheless, the California Supreme Court held

7  that the instruction did not violate the defendant's Sixth Amendment right to a jury trial because

8  the constitutional right does not require "absolute and impenetrable secrecy for jury deliberations

9  in the face of an allegation of juror misconduct," or "constitute [ ] an absolute bar to jury

10  instructions that might induce jurors to reveal some element of their deliberations."  Id. at 443.

11    As a preliminary matter, this Court notes that Petitioner has not cited, and the Court has

12  been unable to locate, any federal authority, let alone United States Supreme Court authority,

13  holding that CALJIC No. 17.41.1, or an instruction substantially similar to it, violates a

14  defendant's federal constitutional rights under the Sixth Amendment.  Absent such a "clearly

15  established" federal law, the Court has no basis for either finding or concluding that the

16  California courts' rejection of Petitioner's claim either was contrary to or involved an

17  unreasonable application of clearly established Supreme Court law.  28 U.S.C. § 2254(d)(1).

18    Turning to the merits of Petitioner's argument, the instruction here does not, as Petitioner

19  asserts,  impinge on the ability of each juror to deliberate independently and reach their own

20  verdict.  The instruction does not require that each word uttered in deliberations be reported or

21  that holdout jurors be singled out and reported to the trial judge.  Rather, the instruction attempts

22  to ensure the proper functioning of the jury by enabling the trial court to investigate jury

23  misconduct when necessary.  The instruction on its face does not misstate the law.  A juror may

24  not refuse to deliberate, may not disregard the law, and may not decide the case by relying on an

25  improper basis.

26  ///

27  ///

28  ///

1    The contention that the instruction chills the "independent" deliberations of jurors by

2    forcing jurors to essentially police one another is both abstract and speculative.[2]  The instruction

3    only authorizes the jury to report a juror who is refusing to deliberate or follow instructions, not a

4    juror who is simply dissenting from the majority.  If jurors were to report a juror to the court

5    simply on the basis of dissenting, the jurors would not be following the instruction as written, as

6    they are presumed to do.  See Aguilar v. Alexander, 125 F.3d 815, 820 (9th Cir. 1997).

7    Moreover, the instruction contains no suggestion that jurors who disagree with other

8    jurors will be punished or suffer negative consequences.  While a reasonable juror might infer

9    from the instruction that the trial court would investigate any reports of misconduct, it would be

10   unreasonable for such jurors to also infer that the trial court would in some fashion mete out

11   punishment to jurors without first fully investigating such allegations to ensure that they were

12   well-founded.

13   Petitioner's claim that the instruction deprived him of his right of jury nullification is

14   equally unavailing.  Jury nullification may be a reality in the courtroom, but it is not a right under

15   the Constitution, laws, or treaties of the United States.  See Crease v. McKune, 189 F.3d 1188,

16   1194 (10th Cir. 1999)(noting no right to jury nullification in the context of federal habeas

17   review);  cf. United States v. Powell, 955 F.2d 1206, 1213 (9th Cir. 1992)(federal defendants are

18   not entitled to jury nullification instructions).[3]  Petitioner has not cited any Supreme Court

19   authority for the proposition that he has a federal constitutional right to jury nullification, much

20   less to an instruction to the jury itself that it may disregard the law in its deliberations.

21   Accordingly, there is not, in this regard, any clearly established federal law for the state court's

22   decision either to contradict or to unreasonably apply.

23   In the absence of any Supreme Court precedent to the contrary, it simply cannot be said

24   that the mere giving of CALJIC No. 17.41.1 was a violation of "clearly established Federal law,

25

26       [2]In the Petition for Review, Petitioner's state appellate attorney characterized the instruction as requiring
27   jurors to "inform on one another."  (LD, Exh. E, p. 13).

28       [3]In California, jurors have the ability to nullify or disregard the court's instructions and evidence, and to
     return a verdict contrary to the law and the evidence, but they have no right of nullification regarding the applicable
     legal principles which govern their role as factfinders.  People v. Williams, 25 Cal.4th 441, 454 (2001).

1   as determined by the Supreme Court of the United States."  28 U.S.C.§ 2254(d)(1); Brewer v.

2   Hall, 378 F.3d 952 (9th Cir. 2004)(affirming denial of habeas petition based upon giving of

3   CALJIC 17.41.1 because of absence of Supreme Court precedent clearly establishing that the

4   instruction is unconstitutional).

5         In order to be entitled to federal habeas corpus relief, Petitioner must show that CALJIC

6   No. 17.41.1 by itself so infected the entire trial that the resulting conviction violated due process.

7   See Estelle, 502 U.S. at 72.  Petitioner has not done so, nor has he shown that there is a

8   "reasonable likelihood" that the jury applied the instruction in a manner that violated the

9   Constitution.  See id.

10        Moreover, even assuming, arguendo, that the challenged instruction did violate

11  Petitioner's Sixth Amendment rights as a matter of clearly established Supreme Court law, the

12  Court has no basis for finding or concluding that the giving of the instruction had a substantial

13  and injurious effect or influence in determining the jury's verdict.  See Brecht, 507 U.S. at 637.

14  Considered as a whole, the instructions given to the jury accurately stated the law and advised the

15  jurors that it was their duty to decide the case based on their individual opinions.

16        Petitioner's implicit allegations regarding the *hypothetical* effect of the challenged

17  instruction on jury deliberations are conclusory and unsupported by the record, and thus remain

18  just that–*hypothetical* effects that were never realized.  Conclusory allegations do not warrant

19  habeas relief. See Jones v. Gomez, 66 F.3d 199, 204-205 (9th Cir.1995)(conclusory allegations

20  made with no reference to the record or any document do not merit habeas relief).  Petitioner is

21  unable to demonstrate any act on the part of the jury which would suggest that the instruction so

22  infected the entire trial so that his conviction violates due process.  Indeed, there is no indication

23  in this record that any problems even arguably attributable to the giving of CALJIC No. 17.41.1

24  (e.g., jury deadlock, conflicts regarding holdout jurors, refusal to follow the law, stifled

25  deliberations, or intrusion by the trial judge into the deliberative process),  occurred during jury

26  deliberations.[4]  Nor, indeed, does Petitioner assert that anything of this ilk occurred.

27

28        [4]As Respondent correctly points out, in Petitioner's Opening Brief in the 5th DCA, defense counsel
conceded that "[n]o misconduct was reported by jurors during deliberations."  (LD, Exh. A, p. 22).  Nor  were the
deliberations protracted.  The jury was excused for the day almost immediately upon receiving its charge, and when

1
2
3
4

The state court resolution of this claim was not contrary to clearly established federal law, as determined by the Supreme Court of the United States, nor did the state court resolution result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. <u>See</u> 28 U.S.C. § 2254(d). Accordingly, the Ground Three must be denied.

5
6

**Ground Four**          **Whether the State Court's rejection of Petitioner's cumulative error claim violated Petitioner's Constitutional rights.**

7
8
9
10

Petitioner next argues that, while any of the errors alleged can be considered seriously prejudicial, when viewed together, the multiple errors demonstrate a miscarriage of justice requiring reversal.   (Doc. 1, p. 6).  This claim is also without merit.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

The cumulative prejudicial effect of multiple trial errors must be considered in determining whether habeas relief is warranted. 28 U.S.C. § 2254; <u>Phillips v. Woodford</u>, 267 F.3d 966, 985 (9th Cir. 2001).  Here, however, there are no constitutional errors to accumulate. <u>See</u> <u>Villafuerte v. Stewart</u>, 111 F.3d 616, 632, (9th Cir.1997) (per curiam).  In analyzing prejudice in a case in which it is questionable whether any "single trial error examined in isolation is sufficiently  prejudicial to warrant reversal," the Ninth Circuit has recognized the importance of considering "the cumulative effect of multiple errors" and not simply conducting "a balkanized, issue-by-issue harmless error review." <u>United States v. Frederick</u>, 78 F.3d 1370, 1381 (9th Cir.1996); <u>see also</u> <u>Whelchel v. Washington</u>, 232 F.3d 1197, 1212 (9th Cir.2000) (noting that cumulative error applies on habeas review); <u>Matlock v. Rose</u>, 731 F.2d 1236, 1244 (6th Cir.1984) ("Errors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair.")  "Multiple errors, even if harmless individually, may entitle a petitioner to habeas relief if their cumulative effect prejudiced the defendant." <u>Ceja v. Stewart</u>, 97 F.3d 1246, 1254 (9th Cir.1996),(citing <u>Mak v. Blodgett</u>, 970 F.2d 614, 622 (9th Cir.1992)).  "Although no single alleged error may warrant habeas corpus relief, the cumulative effect of errors may deprive a

27
28

it resumed the following morning, it reached a verdict after deliberating for approximately six and one-half hours. (RT 204-205).  The only question raised by the jury was one regarding the distinction between a plea and a conviction.  (CT 206).

19

petitioner of the due process right to a fair trial." <u>Karis v. Calderon</u>, 283 F.3d 1117, 1132 (9th Cir.2002); <u>see also</u> <u>Harris By and Through Ramseyer v. Wood</u>, 64 F.3d 1432 (9th Cir.1995). However, the Ninth Circuit has also recognized that where there is no single constitutional error, *nothing* can accumulate to the level of a constitutional violation.  <u>See</u> <u>Rupe v. Wood</u>, 93 F.3d 1434, 1445 (9th Cir. 1996).

In this case, the Court has determined that no single constitutional error has occurred, and therefore, *ipso facto*, there can be no cumulative error.  Accordingly, the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  Petitioner's claim is without merit and must be denied.

## ORDER

Accordingly, for the reasons set forth above, the Petition for Writ of Habeas Corpus (Doc. 1), is DENIED with prejudice.

The Clerk of Court is DIRECTED to enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

Dated:  **August 14, 2007**                          **/s/ Theresa A. Goldner**
                                                          UNITED STATES MAGISTRATE JUDGE